# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANETTE DIXON | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-2405 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**MEMORANDUM**

LOWELL A. REED, Jr., Sr. J                                              AUGUST 31, 2010

Upon consideration of the brief in support of request for review filed by plaintiff (Doc. No. 13) and defendant's response (Doc. No. 15), the court makes the following findings and conclusions:

1. On May 23, 2006, Nanette Dixon ("Dixon") filed for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, alleging an onset date of March 2, 2006. (Tr. 107-14). Throughout the administrative process, including an administrative hearing held on November 14, 2007 before an ALJ, Dixon's claims were denied. (Tr. 14-23; 34-61; 66-70). After the Appeals Council denied review, pursuant to 42 U.S.C. § 405(g), Dixon filed her complaint in this court on August 17, 2009. (Tr. 1-5; Doc. No. 3).

2. In her January 25, 2008 decision, the ALJ concluded, *inter alia*, that: (1) Dixon had a severe anxiety disorder and severe depressive disorder; (2) her impairments did not meet or equal a listing; (3) she had the RFC to perform light work limited to simple repetitive tasks, no interaction with the general public and only occasional interaction with co-workers and supervisors; (4) there were jobs that existed in significant numbers in the national economy that Dixon could perform; and (5) she was not disabled. (Tr. 14 ¶ 4; 16 Finding 2; 17 Finding 3; 18 Finding 4; 22 Finding 9; 23 ¶¶ 1 & 3; 23 finding 10).[1]

3. This Court has plenary review of legal issues, but it reviews the ALJ's factual findings to determine whether they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). It is more than a mere scintilla but may be less than a preponderance. See Brown v.

---

[1] All numbered paragraph references to the ALJ's decision begin with the first full paragraph on each page.

Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). If the conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

      4.    Dixon raises four arguments in which she alleges that the determinations by the ALJ were legally insufficient or not supported by substantial evidence. These arguments are addressed below. However, upon due consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

      A.    First, Dixon contends that the ALJ erred by rejecting the opinion of her treating psychologist, Dr. Theodore Wilf, on an October 18, 2006 welfare form, that Dixon was temporarily disabled due to depression. (Tr. 20 ¶ 4; 268). The issue of disability is reserved for the Commissioner and even a treating physician's opinion thereon is not entitled to any special significance. 20 C.F.R. § 416.927(e)(1; 3); S.S.R. 96-5p.[2] The ALJ explained that she rejected this opinion because Dr. Wilf failed to identify any evidence which supported his opinion or provide specific work-related limitations showing Dixon could not work. Indeed, the form is merely a check-box form with no provision for the identification of supporting evidence. (Tr. 20 ¶ 4; 268). Dixon claims that this opinion should be read in conjunction with Dr. Wilf's and her therapist's notes from Warren E. Smith Mental Health Center ("WES"). Even if her assertion was correct, I have reviewed the records at issue and conclude that they do not materially support Dr. Wilf's opinion that Dixon was temporarily disabled as they document very few serious objective findings and mostly catalog subjective symptoms. (Tr. 253-66; 293-316). Dixon has failed to establish that the ALJ erred by rejecting Dr. Wilf's opinion on disability.

      B.    Second, Dixon argues that while the ALJ assigned great weight to certain findings of psychological consultant Dr. John D. Chiampi, she did not include in her RFC assessment and hypothetical all of the functional limitations found by him. See (Tr. 17 ¶ 1; 20 ¶ 2; 274-89). Like the ultimate disability determination, the RFC assessment is reserved for the Commissioner and a physician's opinion thereon is not entitled to any special significance. 20 C.F.R. § 416.927(e)(2-3); S.S.R. 96-5p. In his November 13, 2006 Psychiatric Review Technique, Dr. Chiampi found a mild functional limitation in Restriction of Activities of Daily Living; a moderate limitation in Difficulties in Maintaining Social Functioning; a moderate limitation in Difficulties in Maintaining Concentration, Persistence, or Pace; and two episodes of decompensation. (Tr. 284). It is to these limitations that the ALJ specifically assigned great weight. (Tr. 17 ¶ 1). In the corresponding mental RFC assessment dated the same day, Dr. Chiampi found eleven moderate limitations and nine mild limitations in the twenty areas of mental functioning. (Tr. 287-88). Although the ALJ mentioned several of these findings, she did not specifically state that she was giving all of them great weight. (Tr. 20 ¶ 2). Dixon contends that the ALJ erred by failing to include all eleven moderate findings in her hypothetical question

---

[2] Moreover, a disability determination from another agency is not binding on the Social Security Administration as other agencies may define disability differently than the S.S.A. 20 C.F.R. § 416.904.

2

and ultimate RFC determination and that, had the ALJ included all eleven moderate limitations, the VE would have determined that Dixon could not work.³ Contrary to Dixon's suggestion, Dr. Chiampi, at the conclusion of his mental RFC assessment, specifically concluded that, *inter alia*, Dixon could make simple decisions, could maintain concentration and attention for extended periods of time, could sustain an ordinary routine and adapt to routine changes without special supervision, and that her limitations "do not preclude [Dixon] from performing the basic mental demands of competitive work on a sustained basis." (Tr. 289). Dixon provides no support for the concept that an ALJ must dissect a consultant's RFC assessment and discuss the weight given to every finding therein. On the contrary, the Third Circuit has held that "[a] written evaluation of every piece of evidence [in the record] is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." Phillips v. Barnhart, 91 Fed. Appx. 775, 780, n. 7 (3d Cir. 2004) (citing Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995)). The ALJ did evaluate the mental RFC assessment, but merely did not discuss every finding in detail. See also Id. (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998) (holding that "the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it"). It is obvious from the ALJ's RFC assessment and hypothetical question which limitations she determined materially affected Dixon's ability to work. I find that the ALJ's RFC assessment of light work limited to simple repetitive tasks, no interaction with the general public and only occasional interaction with co-workers and supervisors, adequately addressed the salient findings from Dr. Chiampi's mental RFC, especially given his concluding explanation of his assessment. Therefore, Dixon's argument to the contrary must fail.

    C. Third, Dixon claims that, although the ALJ examined many of the findings in consultative psychologist Dr. Debra Taras' October 5, 2006 ability to do work-related activities assessment, the ALJ erroneously failed to evaluate Dr. Taras' statement that Dixon "would have a difficult time managing the social demands and stressors of employment." (Tr. 19 ¶4 - 20 ¶ 1; 273). Dixon is correct that an ALJ must provide an explanation when rejecting probative evidence. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). However, again, I find that it is not necessary for the ALJ to address every sentence of every report. Phillips, 91 Fed. Appx. at 780, n. 7. The ALJ addressed Dr. Taras' assessment in some detail. (Tr. 19 ¶4 - 20 ¶ 1). It is unclear from Dr. Taras' statement how difficult of a time she thought Dixon might have coping with social demands and work stressors, but based on her mild and moderate findings, one would assume that she did not believe Dixon would have that difficult of a time coping. (Tr. 269-73). While the ALJ did not address this particular sentence, she did give very little weight to the 50 GAF score assigned by Dr. Taras. The ALJ concluded that this score was not supported by Dr. Taras' assessment, including, *inter alia*, the findings that Dixon had

---

³ Specifically, Dixon claims that the ALJ erroneously omitted the following moderate findings from the RFC assessment and hypothetical: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) the ability to respond appropriately to changes in the work setting; (5) the ability to travel in unfamiliar places or use public transportation; and (6) the ability to set realistic goals or make plans independently of others. (Tr. 287-288).

3

adequate concentration, no difficulties focusing her attention, and could behave in a socially appropriate manner. (Tr. 19 ¶ 4 - 20 ¶ 1). Likewise, the ALJ concluded that the GAF score was not consistent with Dr. Taras' conclusions that: (1) Dixon had "only mild symptoms of depression and anxiety"; and (2) her abilities to work were all merely slightly affected (including her abilities to interact with the public, supervisors, and co-workers), except that her ability to respond appropriately to work pressures was slightly to moderately affected. (Tr. Id.; 270-72). To the extent that Dr. Taras' believed Dixon would have more than minimal difficulty managing the social demands and stressors of employment, the ALJ's reasoning for discounting the 50 GAF score applies equally to discounting such a conclusion. I find that the ALJ's review and assimilation of Dr. Taras' assessment was well within legal bounds. Therefore, I find Dixon's argument unavailing.

                    D.      Fourth, Dixon argues that the ALJ failed to support her credibility assessment with objective evidence. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." Pysher v. Apfel, No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citing Van Horn v. Schweiker, 717 F.2d 871, 973 (3d Cir. 1983)). Moreover, such determinations are entitled to deference. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 271 (3d Cir. 2003). After examining the testimony of Dixon and her witness, Craig McCollum, the ALJ concluded that, while there was evidence of an impairment which could reasonably be expected to produce some of the symptoms alleged, the evidence did not support the degree of symptoms alleged.[4] (Tr. 18 ¶ 4 - 19 ¶ 2). Immediately thereafter, the ALJ described the pertinent medical records and the corresponding mild to moderate findings. (Tr. 19 ¶ 3 - 20 ¶ 4). The ALJ then completed her credibility analysis by, *inter alia*, repeating her conclusion that the medical evidence did not support the degree of disability alleged, addressing certain inconsistencies in the testimony, and examining exactly why the medical evidence and Dixon's activities of daily living did not fully support Dixon's assertions. (Tr. 21 ¶¶ 1-4). It is fairly disingenuous to suggest that the ALJ did not support her credibility assessment with objective medical evidence. I find that the ALJ properly discharged her duty to evaluate the credibility of the witnesses and that her conclusion was supported by substantial evidence.

                    5.      After carefully reviewing all of the arguments and evidence, I find that the ALJ's conclusion that Dixon was not disabled was legally sufficient and supported by substantial evidence. As a result, Dixon's request for relief must be denied and the decision must be affirmed.

                    An appropriate Order follows.

---

[4] Dixon also contends that the ALJ erroneously failed to evaluate the credibility of McCollum's testimony. The ALJ specifically addressed portions of McCollum's corroborating testimony and then embarked on her full credibility analysis. (Tr. 19 ¶ 1 - 21 ¶ 4). Dixon is correct that the ALJ did not again mention McCollum's testimony, however, it is quite evident that the ALJ considered his testimony and discounted it for the same reasons Dixon's testimony was discounted. I find that the ALJ has discharged her duty to "address the testimony of []additional witnesses" as detailed in Burnett v. Comm. Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).